# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ANITA MARTINEZ-TRUMM,<br><br>                       Plaintiff,<br><br>vs.<br><br>CITYWIDE HOME LOANS,<br><br>                       Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:18CV103DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Citywide Home Loan's Motion to Dismiss. On May 23, 2018, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Brian Jackson, and Defendant Citywide was represented by Steven Reid. After hearing argument, the court took the matter under advisement. The court has considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

From April 2012 to October 2016, Plaintiff Anita Martinez-Trumm worked as a loan officer for Defendant Citywide Home Loans. On January 1, 2014, Martinez-Trumm and Citywide entered into a Loan Officer Agreement ("LOA") and a Loan Officer Compensation Agreement ("LOCA") Addendum to comply with the compensation laws under the Dodd-Frank Act. Paragraph 16 of the LOA provided that the parties could only modify the agreement in a

mutually-signed writing that referenced the agreement. However, the LOCA Addendum, which set Plaintiff's hourly rate and commission, stated that "Loan Officer understands and agrees that this Loan Officer Compensation Agreement Addendum 1 can change at any time at Citywide's discretion due to Loan Officer's production, quality, profitability, and other performance."

Plaintiff alleges that while she was employed at Citywide it had a company-wide policy and protocol to reduce a loan officer's pay if another employee was hired to assist that loan officer. As a result of this policy, Plaintiff sent an email to Citywide in December of 2015, proposing that her commission rate be reduced from 1.75% to 1.50% so that she could have an assistant to help her with her workload. Plaintiff's email also stated, "please let me know what is needed to make the change." Citywide responded to Plaintiff's email: "Let's make sure this dropping. If so, let's do it!" Plaintiff alleges that there was never a written modification of the LOA. However, Citywide changed Plaintiff's commission amount from 1.75% to 1.5% and Plaintiff received an assistant. Plaintiff further alleges that Citywide had a policy to pay other employees' bonuses out of her paycheck but provides no other details on this practice.

After Citywide provided Plaintiff with an assistant there is no correspondence or communications between Plaintiff and Citywide related to her commission rate until Plaintiff separated from her employment with Citywide in October 2016. At that time, Plaintiff reached out to Citywide about the issue and Citywide told her that she had agreed to the change in her compensation amount by requesting it, using the assistant, and continuing to work while receiving a paycheck with the lower amount. Citywide's legal counsel also responded to Plaintiff and told her that she acquiesced to the modification by requesting it and failing to object to it while she was employed at Citywide. Citywide also claimed that it had the right to modify the

2

LOCA at its sole discretion at any time.

The LOA stated that upon termination of employment, Citywide would pay the loan officer all compensation due and payable as set forth in the compensation addendum. Plaintiff alleges that Citywide failed to pay her proper compensation under the LOA and compensation addendum.

Plaintiff also alleges that Citywide sent out mailers using her name to attract business after she had terminated her employment at Citywide. One of Plaintiff's clients emailed Plaintiff at her Citywide email address and an individual at Citywide, who claimed to be a long-time partner with Plaintiff, responded to the email and offered to assist the client in Plaintiff's absence. However, Plaintiff claims that she was never a partner with the individual.

Plaintiff brought the present lawsuit against Citywide, alleging that Citywide improperly changed her commission amount, paid other employees' bonuses out of her paycheck, and diverted business from her. Plaintiff's Complaint asserts nine causes of action: (1) breach of contract; (2) violation of the Fair Labor Standards Act (FLSA"); (3) violation of the Utah Pyramid Scheme Act, Utah Code Ann. § 76-6a-1 *et seq.*; (4) violation of the Utah Payment of Wages Act (UPWA"), Utah Code Ann. § 34-28-1 *et seq.*; (5) violation of the Utah Truth in Advertising Act ("UTAA"), Utah Code Ann. § 13-11a-1 *et seq.*; (6) violation of the Utah Sales Representative Commission Payment Act ("USRCPA"), Utah Code Ann. § 13-44-101 *et seq.*; (7) conversion; (8) breach of fiduciary duty; and (9) wrongful appropriation.

## DISCUSSION

### Citywide's Motion to Dismiss

Citywide asks this court to dismiss Plaintiff's Complaint, arguing that all of Plaintiff's

claims should be dismissed as a matter of law because the controlling statute is inapplicable to Plaintiff's allegations and/or Plaintiff's allegations do not state a claim for relief.

**1. Breach of Contract**

Plaintiff alleges that Citywide breached the agreements she had with it by unilaterally modifying her commission rate. Citywide argues that Plaintiff's allegation that it unilaterally started paying her a lower commission is conclusory and fails to state a claim based on the face of the Complaint and the documents referenced in it. While the LOA required a signed writing to be modified, the LOCA Addendum states that it supersedes the LOA and that Citywide could change the terms of the Addendum at any time. Plaintiff's commission rate was provided for in the LOCA Addendum, not the LOA.

In response to Citywide's claim that it had discretion to change the terms of the LOCA, Plaintiff argues that this term is lacking in consideration and unenforceable. However, a provision is not illusory merely because it grants discretion to one party. Moreover, the term is tied to a list of bases for which Citywide can exercise its discretion. In addition, there court finds no basis for finding the terms of the compensation agreement to be without consideration. Plaintiff is agreeing to work and Citywide is agreeing to pay her a certain commission rate for her work. Plaintiff's arguments would render every employment agreement coercive, illusory, and lacking in consideration.

Although Plaintiff claims an alleged lack of offer, acceptance, and consideration, she emailed Citywide offering to reduce her commission rate in exchange for receiving a full-time assistant. Plaintiff offered: "Beginning January 1, [2016,] I would like to change my comp plan to 1.50% to cover the cost of my assistant Chandra Balle. Please let me know what is needed to

4

make the change." Citywide accepted the offer by lowering her commission rate to 1.50% and providing Plaintiff with an assistant. Despite any conditional language that may have been in the emails, the parties actions and performance manifested their meaning and intent to modify the contract. The actions and performance, including Plaintiff's failure to contest any of the actions and performance while she was employed at Citywide, demonstrate a meeting of the minds on the terms for a modification offered in Plaintiff's email. The parties modified the LOCA Addendum through their email exchange and performance thereafter. The addition of an assistant necessarily impacts Plaintiff's profitability and Citywide had the discretion under the LOCA to modify Plaintiff's commission rate at any time based on such a factor. Therefore, based on the terms of the agreements and Plaintiff's allegations, Citywide did not breach the LOCA by modifying Plaintiff's commission rate.

Plaintiff alleges that her breach of contract claim cannot be dismissed because the modified contract was void under fraud and coercion. But Plaintiff did not assert causes of action for fraud or coercion. In support of her breach of contract claim, Plaintiff argued that any modification that Citywide claims was entered into between the parties was induced through fraud, the result of coercion, and the breach of contract violated the duty of good faith and fair dealing. These passing references to causes of action, which are presented as arguments in support of the breach of contract claim, cannot now be argued to be independent legal claims against Citywide. *Burke v. City & Cnty. of Denver*, 72 F3d 137 (10th Cir. 1995) (holding that passing references to statutes and legal claims in complaint was insufficient to assert claims). Moreover, fraud would need to be pleaded with particularity and Plaintiff has no attempt to plead facts in support of a fraud claim.

5

Furthermore, Plaintiff argues that the contract would be void and illegal under Utah's Sales Representative Commission Payment Act because Plaintiff was not an employee under the SRCPA. The SRCPA applies to sales representative but not employees. Plaintiff cites to IRS regulations that are inapplicable to the SRCPA. Plaintiff's Complaint states that she was a Citywide employee and her agreements with Citywide refer to her as an employee. Therefore, the court does not find the employment agreements to be void under the SRCPA.

**2. Fair Labor Standards Act Claim**

Citywide argues that Plaintiff's FLSA claims fails as a matter of law because a Plaintiff cannot bring a civil action for damages under the FLSA for an employer's alleged failure to reimburse work-related expenses. Employees are limited under the FLSA to civil actions seeking damages for unpaid overtime and minimum wages and retaliation. 28 U.S.C. § 216(b). Plaintiff cites to the FLSA, 29 U.S.C. § 207(e)(2), and its implementing regulation, 29 C.F.R. § 778.217, but these provisions merely describe what payments by the employer may be excluded from the calculation of the "regular rate." These out-of-context provisions do not mandate reimbursement of expenses by employees nor do they support a cause of action for reimbursement of expenses under the FLSA.

Federal courts have held the FLSA does not require reimbursement for work-related expenses, except in the narrow circumstances where, without reimbursement, the employee's hourly rate of pay would fall beneath the minimum wage. *See, e.g., Sanchez v. Aerogroup Retail Holdings, Inc.*, 2013 WL 1942166, at \*9 (N.D. Cal. May 8, 2013). There is no allegation in this case that Plaintiff's pay ever fell below the minimum wage.

Therefore, Plaintiff's FLSA cause of action fails to state a claim.

Plaintiff argues that her citation to the FLSA relates to her breach of contract claim and is in reference to the implied covenant of good faith and fair dealing and violation of public policy under the terms of the employment agreement as well as unjust enrichment. Plaintiff claims that if there is a right under a statute, then there is a remedy and it is not an excuse to claim that Plaintiff does not have a right to recover for what occurred. But Plaintiff's contention that if there is a right under a statute, then there is a remedy is belied by the many courts that have rejected attempts to create a private right of action from a federal regulation. *Alexander v. Sandoval*, 532 U.S. 275, 289-293 (2001). The FLSA only provides for causes of action related to overtime pay and pay that falls below the minimum wage. Plaintiff does not allege either of these kinds of actions. Therefore, the FLSA does not provide a basis for a breach of contract claim or a claim for a breach of the implied covenant of good faith and fair dealing.

### 3. Utah Pyramid Scheme Act Claim

Citywide contends that Plaintiff cannot state a claim under the UPSA based on the facts alleged in her Complaint. The statute defines a "Pyramid scheme" to mean "any sales device or plan under which a person gives consideration to another person in exchange for compensation or the right to receive compensation which is derived primarily from the introduction of other persons into the sales device or plan rather than from the sale of goods, services, or other property." Utah Code Ann. § 76-6a-2. Thus, the UPSA prohibits schemes that provide compensation derived primarily from recruitment, not goods or services. *Id.*

Plaintiff argues that she properly alleged a claim in that she claims that her own compensation was reduced or her right to receive compensation changed in exchange for

7

introducing another employee into the company instead of from the sale of goods, services, or property. However, Plaintiff's reliance on the definition of a prohibited "pyramid scheme" is inapplicable to the facts of this case. The UPSA does not apply to Plaintiff's allegations that Citywide required her to reduce her pay in order to hire an assistant. Plaintiff did not allege that her compensation was derived "primarily" from the introduction of her assistant into the company as opposed to having her compensation derived primarily from the sale of goods or services. In addition, Plaintiff's assistant was paid based on actual services rendered in assisting Plaintiff as a loan officer. There is no allegation that pay was given solely based on recruitment. Therefore, the UPSA has no application to Plaintiff's allegations and the court dismisses Plaintiff's UPSA claim as a matter of law for failure to state a claim upon which relief may be granted.

In addition, Plaintiff's novel argument regarding fraud on the company's stockholders is unrelated to any of the allegations in Plaintiff's Complaint. Moreover, there is no legal support for the proposition that the UPSA was designed to apply to stockholder fraud. The UPSA simply has no application in this case.

**4. Utah Payment of Wages Act Claim**

Citywide seeks dismissal of Plaintiff's UPWA claim as a matter of law because Citywide did not divert part of her wages without her consent. Based on Plaintiff's allegations, she and Citywide agreed to modify her rate of pay, which is a term and condition of employment. *Blue Circle Cement Co v. N.L.R.B.*, 107 F.3d 880 (10th Cir. 1997). Therefore, Citywide did not violate the UPSA because it never illegally withheld or diverted Plaintiff's wages. The UPWA's withholding and diverting prohibition does not apply to the parties' agreement to change

8

Plaintiff's commission rate.

Even if the reduction in commissions could be considered a withholding or diversion of wages, Plaintiff's allegations demonstrate that she consented to the reduction in her written email to Citywide. Plaintiff's email stated, "Beginning January 1, I would like to change my comp plan to 1.50% to cover the cost of my assistant Chandra Balle." Plaintiff's allegations demonstrate her consent to the change in her commission rate. Accordingly, the court dismisses Plaintiff's UPWA claim because the UPWA does not apply to a change in the terms of employment and, even if it did, Plaintiff consented in writing to the change in her commission rate. Therefore, Plaintiff's UPWA allegations fail to state a claim upon which relief can be granted.

### 5. Utah Truth in Advertising Act Claim

Citywide argues that Plaintiff's UTAA claim fails as a matter of law because Plaintiff does not allege that she provided notice to Citywide before filing this lawsuit as required by the UTAA. A party may not seek relief under the UTAA without first giving notice of the alleged violation and giving the "prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement." Utah Code Ann. § 13-11a-4(5).

Plaintiff has the burden of pleading that she provided Citywide with notice under this statutory claim. Plaintiff has not met this burden and does not seek leave to amend her Complaint to do so. Accordingly, the court dismisses Plaintiff's UTAA claim.

### 6. Utah Sales Representative Commission Payment Act Claim

Plaintiff's USRCPA claim fails as a matter of law because it expressly excludes "employees of a principal" from the definition of "sales representative." Utah Code Ann. § 13-44-102(4)(b)(1). Plaintiff alleges in her Complaint that she was an employee of Citywide and the

agreements between the parties identify Plaintiff as an employee.

IRS guidelines for determining whether someone is an employee or an independent contractor are not applicable to a determination under the USRCPA. Even if the IRS guidelines controlled, Plaintiff does not convincingly demonstrate that she would be considered an independent contractor. The allegation that she stopped working at the company does not support a finding that she was an independent contractor as opposed to an employee. Employees can resign their employment as much as an independent contractor can. Her employment contract states that she is an at-will employee and may be terminated at any time with or without cause.

Based on the facts as alleged in Plaintiff's Complaint, the court finds Plaintiff's USRCPA claim to be without merit and dismisses it for failure to state a claim.

**7. Conversion**

Utah law recognizes conversion as an act of "willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295-96 (Utah 1999). Consent is a complete defense to the intentional tort of conversion: "No intentional tort will lie where the plaintiff consents to otherwise tortious activity." *Lee v. Langley*, 212 P.3d 33, 38 n.3 (Utah Ct. App. 2005).

Plaintiff alleges that Citywide intentionally interfered with her personal property by taking money from her paycheck to pay bonuses to other employees and lowering her commission rate to pay for her assistant. Plaintiff's conclusory allegation that Citywide took money from her paycheck to pay other employees' bonuses provides no details about the alleged

conduct. Plaintiff argues that Federal Rule of Civil Procedure 8 does not require detailed factual allegations. But the allegation lacks the basic details necessary to survive a motion to dismiss. A claim must be plausible not "merely possible." *Utah Republican Party v. Herbert*, 141 F. Supp. 3d 1195, 1199 (D. Utah 2015). Plaintiff does not allege when the money was taken, on how many occasions it was taken, how much money was taken, or to which employees the bonuses were allegedly paid. She never claims to have communicated with Citywide about the practice or complained to anyone about it. Because Plaintiff fails to provide any factual support or details, her conversion claim with respect to the bonuses is not plausible.

Plaintiff's conversion claim related to her commission rate also fails to state a claim as a matter of law because Citywide had Plaintiff's consent to lower her commission rate. Plaintiff offered to lower her commission rate to cover the cost of an assistant. Plaintiff does not allege that Citywide acted contrary to her request. Therefore, the court dismisses Plaintiff's conversion claim.

**8. Breach of Fiduciary Duty Claim**

Citywide argues that it is axiomatic that a plaintiff cannot prevail on a breach of fiduciary duty claim without first showing the existence of a fiduciary duty. *See Kirk v. Collins*, 2015 WL 730028, at *10 (D. Utah Feb. 19, 2015). Although Plaintiff alleges that a fiduciary duty was created between herself and Citywide, it is well-settled that an employment relationship is not a fiduciary relationship. *Id.*, 2015 WL 730028, at *10; *Combs v. PriceWaterhouseCoopers*, *LLP*, 382 F.3d 1196, 1200 n.2 (10th Cir. 2004) (Plaintiff "cannot bring this suit solely in his capacity as an employee because . . . employers do not generally owe fiduciary duties to employees.").

Plaintiff, however, contends that Citywide relies on a general rule that applies to

employees with an at-will relationship with their employers whereas her relationship with Citywide was contractual. Plaintiff fails to acknowledge that her agreements with Citywide state that she was an at-will employee. Nonetheless, Plaintiff also argues that the agreements show that Citywide has a fiduciary duty with respect to reporting earned funds correctly to the IRS and there is no difference between a trustor and a trustee when it comes to the payment of wages of which a fiduciary relationship exists, employee or not. Plaintiff, however, offers no support for her sweeping assertion that employers owe a general fiduciary duty to their employees. In fact, settled case law provides that the general rule is that an employer does not owe a fiduciary duty to its employees. None of the cases Plaintiff cites stands for the proposition that an employment relationship on its own creates a fiduciary duty. Asserting that an employer filling out tax forms for employees created a fiduciary duty would create a fiduciary duty in almost every employment relationship. Moreover, the alleged breaches in this case are a consensual reduction in Plaintiff's wages for the provision of an assistant and a conclusory claim that Citywide took an unknown amount of Plaintiff's wages at unspecified times to pay for an unknown amount of bonuses for unspecified coworkers. The court concludes that neither of these allegations state a plausible claim for breach of fiduciary duty. Accordingly, the court dismisses Plaintiff's breach of fiduciary duty claim.

### 9. Wrongful Appropriation Claim

Plaintiff asserts a claim for wrongful appropriation as an aspect of invasion of privacy. A Utah Court of Appeals case addressed an invasion of privacy tort involving the "appropriation of name or likeness for the benefit of another." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 379 (Utah Ct. App. 1997). In *Stien*, the court stated that "this privacy tort was examined by

the Utah Supreme Court in *Cox v. Hatch*, 761 P.2d 556 (Utah 1988). *Cox* requires the plaintiff to establish three elements: (1) appropriation, (2) of another's name or likeness that has some 'intrinsic value,' (3) for the use or benefit of another." *Stien*, 944 P.2d at 379.

Plaintiff alleges that Citywide used her name and likeness when one of Plaintiff's clients emailed Plaintiff's Citywide email after she left her employment with Citywide and another Citywide employee responded, claiming to be a partner of Plaintiff and stating that she could help the client. Plaintiff contends that the employee used Plaintiff's name or likeness, which had intrinsic value, to induce the client to do business with Citywide. However, the email Plaintiff relies on for her misappropriation claim speaks for itself. The email shows that a Citywide employee received an inquiry directed to Plaintiff at Plaintiff's former Citywide email address and the Citywide employee simply responded to the questions posed. Plaintiff has not alleged that her name and likeness have some intrinsic value. The only allegation is that an employee claimed to have worked with her and offered to help a former client. These allegations, without more, do not state a claim for misappropriation.

Relying on the doctrine of agreed equivalents, Plaintiff also asserts that her misappropriation claim survives because Citywide violated several contractual provisions in the agreements between the parties. For example, Plaintiff points to a provision stating that Plaintiff had no rights to any of Citywide's trade names or marks and a twelve-month non-solicitation provision, to argue that equivalent reciprocal promises apply to Citywide in relation to Plaintiff's name and business interests. Plaintiff, however, misapplies the doctrine of agreed equivalents. The doctrine does not make every contractual provision apply mutually or reciprocally to each party to the contract. Such a doctrine would produce illogical results. Parties to a contract

13

bargain for the provisions in a contract and the duties and obligations bargained for apply to the party to whom the contract states it applies. In this case, the parties did not bargain for or agree to a mutuality of the provisions. The non-solicitation provisions and provision relating to the use of "Citywide Marks" apply to Plaintiff, not Citywide. The "agreed equivalents" doctrine has no application to this case. Therefore, the court dismisses Plaintiff's misappropriation claim.

## CONCLUSION

For the reasons set forth above, Defendant Citywide Home Loans' Motion to Dismiss is GRANTED and Plaintiff's Complaint is dismissed.

DATED this 19th day of June, 2018.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge